1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

9

10

BRIAN SISSON, derivatively on behalf of
ZILLOW GROUP, INC.,

Civil Action No.:

11

Plaintiff,

12

13

vs.

**VERIFIED STOCKHOLDER**
**DERIVATIVE COMPLAINT**

14

15

16

17

18

19

RICHARD N. BARTON, ERIK
BLACHFORD, AMY BOHUTINSKY,
CLAIRE CORMIER THIELKE, LLOYD
FRINK, JAY HOAG, GREGORY
MAFFEI, GORDON STEPHENSON,
ALLEN W. PARKER, JEREMY
WACKSMAN, and APRIL
UNDERWOOD,

**JURY DEMANDED**

20

Defendants,

21

22

-and-

23

ZILLOW GROUP, INC.,

24

Nominal Defendant.

25

26

27

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT

28

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Plaintiff Brian Sisson, ("Plaintiff"), by and through his counsel, hereby submits this Verified Stockholder Derivative Complaint (the "Complaint") for the benefit of nominal defendant Zillow Group, Inc. ("Zillow" or the "Company") against the Individual Defendants (as defined below) seeking to remedy their breaches of fiduciary duties and other violations of law from August 7, 2020, through November 2, 2021 (the "Relevant Period"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon information and belief based on the investigation of undersigned counsel, which includes, without limitation: (a) review and analysis of public filings made by Zillow with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Zillow; (c) review of news articles, stockholder communications, and postings on Zillow's website concerning the Company's public statements; (d) pleadings, papers, and any documents filed with and publicly available from related consolidated securities fraud class action pending in this Court captioned, *Barua v. Zillow Group Inc., et al.,* Case No. 2:21cv1551 (the "Securities Class Action"); and (e) review of other publicly available information concerning Zillow and the Individual Defendants.

## NATURE OF THE ACTION

1.    This is a shareholder derivative action asserting claims for breach of fiduciary duty and other violations of law against certain officers and members of the Company's Board of Directors (the "Board").

2.    Zillow is a real estate services company that operates popular real estate websites including Zillow and Trulia. In addition to the generation of advertising revenue from these websites, Zillow earns referral fees when matching prospective buyers and sellers with real estate agents and brokers.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 1

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

3.      In 2018, the Company launched its Zillow Offers program, also known as an iBuying program, wherein Zillow Offers buys homes for cash, eliminating the need for sellers to stage and show their homes. Zillow Offers handles any repairs and then resells the properties.

4.      The term "iBuyer" is used because companies with this program use algorithms to quickly value, buy, and sell the homes. The principle behind iBuying is simple: Leveraging the power of big data, tech firms estimate the price at which they think they can sell a property, which then informs their offers to buy. They tend to offer lower prices than traditional buyers, but attract sellers by promising faster, all-cash deals.

5.      Zillow believed it had the secret to the iBuying world: the Zestimate. Launched in 2006, the algorithm was a confluence of two things: Zillow's expertise in pricing homes, and a method of buying properties that relied on accurate estimates.

6.      During the Relevant Period, the Individual Defendants caused the Company to make materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. Specifically, the Individual Defendants repeatedly, falsely touted the strength and sustainability of the Company's Zillow Offers business and failed to disclose to investors that: (1) the Company knew that it did not have the ability to properly price homes for its Zillow Offers business; (2) this inability, in addition to labor and supply shortages, resulted in a backlog of inventory in the Zillow Offers business; (3) as a result of the foregoing, the Company was reasonably likely to wind-down its Zillow Offers business, which would have a material adverse impact on the Company's financial results; and (4) as a result of the foregoing, the Individual

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 2

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.    The truth started to emerge on October 18, 2021, when Zillow announced it was taking a break from buying U.S. homes. The Company announced it would stop pursuing new purchases for the remainder of the year as it worked through a backlog of properties already in its pipeline.

8.    Then on November 2, 2021, Zillow released its third quarter 2021 financial results and announced that it was shutting down Zillow Offers and eliminating 25% of its workforce. The Company further disclosed that its home segment, which is mostly Zillow Offers, lost $422 million that quarter.

9.    The Individual Defendants breached their fiduciary duties of loyalty, good faith, due care, oversight, and candor by knowingly engaging in the deceptions alleged herein.

10.    As a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, Zillow has sustained damages as described below.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)(1)) and Rule 14a-9 promulgated thereunder (17 C.F.R. § 240.14a-9). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Actions based on violations of the Exchange Act.

12.    This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332. All Defendants are completely diverse from Plaintiff and the amount in controversy exceeds $75,000.00.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 3

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

13.     This Court has personal jurisdiction over each of the Defendants because each defendant is either a corporation conducting business and maintaining operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Zillow maintains its principal executive offices in this District and therefore (i) a substantial portion of the transactions and wrongs complained of herein occurred in the District; and (ii) Defendants have received substantial compensation and other transfers of money in the District by doing business and engaging in activities having an effect in the District.

### PARTIES

15.     Plaintiff is a stockholder of Zillow, was a stockholder of Zillow at the time of the wrongdoing alleged herein and has been a stockholder of Zillow continuously since that time. Plaintiff is a citizen of Michigan.

16.     Zillow, a digital real estate company, operates real estate brands on mobile applications and websites in the United States. The Company operates through three segments: Homes; Internet, Media & Technology ("IMT"); and Mortgages. The Homes segment is involved in resale of homes; and title and escrow services to home buyers and sellers, including title search procedures for title insurance policies, escrow, and other closing services. The IMT segment offers premier agent, rentals, and new construction marketplaces, as well as dotloop, display, and other advertising, as well as business software solutions. The Mortgage segment provides home loans; and marketing products including custom quote and connect services.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 4

17.     Defendant Rich Barton ("Barton") serves as the Company's Chief Executive Officer ("CEO"). Barton co-founded Zillow in 2005 and served as CEO until 2010, when he became the Company's executive chairman. He returned as CEO in early 2019. For fiscal year 2020, Barton received $8,446,226 in executive compensation. Per the Company's proxy statement filed with the SEC on April 21, 2021 ("2021 Proxy"), Barton owns 4,192,400 Class A common stock; 3,763,725 Class B common stock; and 7,469,678 Class C common stock. Barton holds 30.6 % total voting power.   Upon information and belief, Defendant Barton is a citizen of Washington.

18.     Defendant Lloyd Frink ("Frink") is a co-founder of Zillow, Chairman of the Board and President since 2019, and a director of Zillow since 2005. Per the 2021 Proxy, owns 3,204,323 Class A common stock; 2,453,722 Class B common stock; and 4,142,783 Class C common stock.  Fink holds 19.9% total voting power. For fiscal year 2020, Frank received $6,843,116 in executive compensation. Upon information and belief, Defendant Frink is a citizen of Washington.

19.     Defendant Allen W. Parker ("Parker") has served as the Company's Chief Financial Officer since 2018. For fiscal year 2020, Parker received $5,283,623 in executive compensation. Upon information and belief, Defendant Parker is a citizen of Washington.

20.     Defendant Jeremy Wacksman ("Wacksman") has served as the Company's Chief Operating Officer ("COO") since February 2021. Since joining the Company in 2009. Wacksman has held a number of leadership positions including President of Zillow from December 2019 to February 2021, President, Zillow Brand and Co-Head of Zillow Offers from June 2018 to December 2019, Chief Marketing Officer from July 2016 to June 2018, Chief Marketing Officer of Zillow from August 2015 to July 2016 and Vice President of Marketing and Product

1   Management from 2009 to August 2015. For fiscal year 2020, Wacksman received

2   $6,843,784 in executive compensation. Upon information and belief, Wacksman is

3   a citizen of Washington.

4        21.   Defendant Erik Blachford ("Blachford") has served as a Zillow director

5   since 2005. For fiscal year 2020, Defendant Blachford received compensation of

6   $250,000. Upon information and belief, Defendant Blachford is a citizen of the

7   United Kingdom.

8        22.   Defendant Amy C. Bohutinsky ("Bohutinsky") has served as a Zillow

9   director since 2018 and has served in several leadership roles at Zillow since 2005,

10   including Chief Marketing Officer and COO.  For fiscal year 2020, Bohutinsky

11   received compensation of $250,000.  Upon information and belief,  Defendant

12   Bohutinsky is a citizen of Washington.

13        23.   Defendant Claire Cormier Thielke ("Thielke") has served as a Zillow

14   director since 2020. For fiscal year 2020, Thielke received compensation of

15   $125,100 as a director. Upon information and belief, Defendant Thielke is a citizen

16   of Texas.

17        24.   Defendant Jay Hoag ("Hoag") has served as a Zillow director since

18   2005. For fiscal year 2020, Hoag received compensation of $250,000. Upon

19   information and belief, Defendant Hoag is a citizen of California.

20        25.   Defendant Greg Maffei ("Maffei") has served as a Zillow director since

21   2005. For fiscal year 2020, Maffei received compensation of $250,000. Upon

22   information and belief, Maffei is a citizen of Colorado.

23        26.   Defendant Gordon Stephenson ("Stephenson") has served as a Zillow

24   director since 2005. For fiscal year 2020, Stephenson received compensation of

25   $250,000. Upon information and belief, Defendant Stephenson is a citizen of

26   Washington.

27

28   VERIFIED STOCKHOLDER DERIVATIVE
     COMPLAINT - 6

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

27.    Defendant April Underwood ("Underwood") has served as a Zillow director since 2017. For fiscal year 2020, Underwood received compensation of $250,000. Upon information and belief, Defendant Underwood is a citizen of California.

28.    Defendants Barton, Blachford, Bohutinsky, Thielke, Frink, Hoag, Maffei, Stephenson, Parker, Wacksman, and Underwood are referred to herein as the "Individual Defendants."

29.    Zillow and the Individual Defendants are collectively referred to herein as "Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

30.    By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

31.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 7

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

32.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Zillow were required to, among other things:

a.     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

b.     conduct the affairs of the Company in a lawful, efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

c.     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

d.     remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

e.     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

33.     Each Individual Defendant, as a director and/or officer, owed to the Company and its stockholders the fiduciary duties of loyalty, good faith and candor

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a conscious disregard for their duties to the Company and its stockholders that Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

34.     The Company has adopted a Code of Business Conduct (the "Code") that applies to all employees, including officers and members of the Board.

35.     The Code begins that Zillow "is committed to promoting high standards of honest and ethical business conduct and compliance with applicable laws, rules and regulations."

Honest and Ethical Conduct and Fair Dealing

Every person subject to this Code should endeavor to deal honestly, ethically and fairly with the Company's consumers, customers, suppliers, competitors and employees. Statements regarding the Company's products and services must not be false, misleading, deceptive or fraudulent. No person subject to this Code may take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair-dealing practice.

Compliance with Laws, Rules and Regulations

The Company requires that all persons subject to this Code comply with all laws, rules and regulations applicable to the Company wherever it does business.

***

Accuracy of Books and Records

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 9

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

All Company books, records and accounts shall be maintained in accordance with all applicable regulations and binding standards and accurately reflect the true nature of the transactions they record.

\*\*\*

No false or misleading entries shall be made in the Company's books or records for any reason. . . .

Financial Reporting
Overview

Zillow Group, Inc. is required to follow strict accounting principles and standards, to report financial information accurately and completely in accordance with these principles and standards, and to have appropriate internal controls and procedures to ensure that our accounting and financial reporting complies with applicable laws. The integrity of our financial transactions and records is critical to the operation of our business and is a key factor in maintaining the confidence and trust of our employees, security holders and other stakeholders.

Compliance with rules, controls and procedures

The Company requires that all transactions be properly recorded, classified and summarized in our financial statements, books and records in accordance with our policies, controls and procedures, as well as all generally accepted accounting principles, standards, laws, rules and regulations for accounting and financial reporting. If you have responsibility for or any involvement in financial reporting or accounting, you should have an appropriate understanding of, and you should seek in good faith to adhere to, relevant accounting and financial reporting principles, standards, laws, rules and regulations and the Company's financial and accounting policies, controls and procedures. If you are a senior officer, you should seek to ensure that the internal controls and procedures in your business area are in place, understood and followed.

Public Disclosures

The Company files reports and other documents with regulatory authorities, which may include the United States Securities and

Exchange Commission and NASDAQ. The Company may make other public communications, such as issuing press releases. All information provided in the Company's public reports and communications must be complete, fair, accurate, timely and understandable, and must also comply with applicable laws, rules and regulations. Employees, officers and directors who are asked to provide information for the Company's public disclosures must use all reasonable efforts to provide complete, fair, accurate, timely and understandable information.

If any person subject to this Code becomes aware of any information concerning (a) material defects in the disclosures made by the Company in its public filings; (b) significant deficiencies in the design or operation of internal controls; (c) any violation of this Code that involves management or other employees who have a significant role in the Company's financial reporting, disclosures or internal controls; or (d) any material violation of the law or this Code, you should follow the guidelines described in the Reporting and Compliance Procedures section.

In connection with its public communications, the Company is required to comply with Regulation FD (Fair Disclosure) under the federal securities laws. Regulation FD provides that when the Company discloses material, non-public information about it to securities market professionals or shareholders (where it is reasonably foreseeable that the shareholders will trade on the information), the Company must also disclose the information to the public. You are required to read carefully and comply with the Company's Policy and Procedures for Public Disclosures and Communications with Analysts, Investors and Media.

36.    The Company also adopted a Code of Ethics which applies to its CEO and CFO, Defendants Barton and Parker, respectively, who were required to comply with the following principles:

- Honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships;

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 11

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

- Full, fair, accurate, timely and understandable disclosure in reports and documents that the Company files with, or submits to, the Securities and Exchange Commission (the "SEC") and other public communications made by the Company; and

- Compliance with governmental laws, rules and regulations applicable to the Company.

37.     Additionally, per the Audit Committee Charter, during the Relevant Period the purpose of the Audit Committee, comprised of Defendants Maffei, Blachford, and Stephenson (the "Audit Committee Defendants"), was to assist the "Board in oversight of (a) our accounting and financial reporting processes and the audits of our financial statements, (b) the independent auditor's qualifications, independence and performance, (c) our internal audit function, if any, and the performance of our internal accounting and financial controls, and (d) our compliance with legal and regulatory requirements."

38.     To that end, per the Audit Committee Charter, the responsibilities of the Audit Committee included:

- Regularly review with the independent auditor any audit problems or difficulties and management's response, including any restriction on the scope of activities, access to required information, the adequacy of internal controls, adjustments noted or proposed by the independent auditor but not taken (as immaterial or otherwise) by management, communications between the audit team and the national office concerning auditing or accounting issues, and any management or internal control letters issued or proposed to be issued by the auditor.

- Review at least annually. . . major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, and major issues as to the adequacy of the

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Company's internal controls and any special audit steps adopted in light of material control deficiencies. . . .

- Review and discuss with management from time to time the effectiveness of, or any deficiencies in, the design or operation of disclosure controls and procedures or internal controls and any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal controls. Review any report issued by the Company's independent auditor regarding management's assessment of the Company's internal controls.

- Discuss policies with respect to risk assessment and risk management, including the Company's major financial risk exposures and the steps management has taken to monitor and control such exposures.

- Establish and oversee a code of ethics for senior financial officers pursuant to and to the extent required by laws, rules and regulations applicable to the Company from time to time and assist the Board in the oversight of such code of ethics.

## SUBSTANTIVE ALLEGATIONS

**The Company Launches Zillow Offers**

39.     Zillow is a digital real estate company that operates real estate brands on mobile applications and websites in the United States. The Company operates through three segments: Homes; Internet, Media & Technology; and Mortgages. The Homes segment is involved in resale of homes; and title and escrow services to home buyers and sellers, including title search procedures for title insurance policies, escrow, and other closing services. The IMT segment offers premier agent, rentals, and new construction marketplaces, as well as dotloop, display, and other

1   advertising, as well as business software solutions. The Mortgage segment provides

2   home loans; and marketing products including custom quote and connect services.

3       40.    In May 2017, Zillow launched Zillow Offers, that lets homeowners

4   receive cash offers from "select investors" as well as a market appraisal from

5   regional agents to see what the house would be worth on the open market. The

6   initiative was first tested in Las Vegas and Orlando, Florida and was billed as a way

7   for homeowners to avoid traditional hassles and sell quickly.

8       41.    According to a press release from the Company, Zillow Offers

9   connected homeowners to offers from investors as well as a comparative market

10  analysis ("CMA") from a local real estate agent. The process started when a

11  homeowner was able to provide basic information about their home — number of

12  bedrooms, square footage, remodel information, *etc.* — and upload several photos

13  of the home. Select investors who buy homes in the area can present offers alongside

14  the local agent's CMA. Any offers and the CMA will include an overview of fees

15  associated with each option, Zillow says. There was no obligation for the seller to

16  accept any offers.

17      42.    By avoiding traditional home sale necessities such as staging and open

18  houses, Zillow says that sellers alleviate some stress, and they can gain additional

19  control over such things as closing date and price.

20      43.    Indeed, Zillow pinned its future on Zillow Offers. In February 2019,

21  Zillow Group doubled down on Zillow Offers with lofty projections of annual

22  revenue of $20 billion within five years.  Defendant Barton called the shift to focus

23  on home sales the beginning of "Zillow 2.0." Defendant Barton said the Company

24  is "on the threshold of becoming a brand new startup." The Company planned to

25  drastically step up the pace of purchasing homes. To get to $20 billion in revenue

26

27

28  VERIFIED STOCKHOLDER DERIVATIVE
    COMPLAINT - 14

from the Homes segment, Zillow projected that it would purchase 5,000 homes a month.

44.     The Zillow Offers program was a significant driver of revenue growth for the Company as the program continued to expand substantially. By the end of 2019, the Company was buying and selling homes directly in 22 markets and Zillow Offers "accounted for nearly $1.4 billion of revenue for the year." In fact, Zillow Offers accounted for roughly half of the Company's total revenue in 2019.

**The Individual Defendants Cause the Company to Issue False and Misleading Statements During the Relevant Period**

45.     The Relevant Period begins on August 7, 2020, when the Company issues its second quarter 2020 financial results after the market closed on August 6, 2020. In connection with its quarterly results, Zillow reported that "quarterly revenue grew 28% year over year to $768 million, driven primarily by a continued increase in Zillow Offers resale volume." Critically, the Company explained that while "Zillow Offers entered Q2 with home acquisitions temporarily paused due to market uncertainty" resulting from the COVID-19 pandemic, "[d]uring the quarter, the company sold 1,437 homes and purchased 86 homes through Zillow Offers, ending Q2 with 440 homes in inventory" and "is now actively purchasing homes in all 24 markets where it previously operated."

46.     During the accompanying conference call with investors later same day, Defendant Barton, Zillow's CEO and Co-Founder, boasted of Zillow Offers program even with the ongoing COVID-19 pandemic:

> In Zillow Offers, we used enhanced selling strategies and differentiated data signals to manage our inventory. The fact that we were able to make it gracefully through the uncertainty of the past 5 months,

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

continuing to sell inventory is a testament to the team's agility. Our combination of machines and humans is getting smarter and more experienced.

47.    In response to an analyst's questions regarding a post-COVID-19 Zillow Offers program, Barton further explained:

So starting with your question, Robert, about how aggressive we want to be with Zillow Offers. Well, we've now, as of today, actually opened up all 24 of the markets that we had open before COVID hit. And we -- so you can tell, by the way, we've opened markets and how aggressively we've reopened markets, you can tell we feel good about it. And the supposition is that this price certainty, this time certainty and convenience and the kind of safety associated with -- if you're a seller, not having to have a bunch of people go through your house, and if you're a buyer, letting yourself into a home with a Zillow app with nobody there, those both feel like good things in the midst of a health crisis, and we're seeing that play out.

So we feel that in a way, the pandemic highlights some of the benefits of working with Zillow Offers. It is -- the reopening is early days. So we're watching. And -- carefully, but we're feeling good about kind of the post-COVID Zillow Offers.

48.    On November 5, 2020, Zillow announced its financial results for third quarter 2020. During the Company's accompanying conference call that day, Defendant Barton again touted the growing momentum behind Zillow Offers:

In our Zillow Offers business, we are ramping back up across the country after pausing acquisitions back in March, and it will take time to rebuild our inventory levels. We added Jacksonville, Florida to our list of 25 markets where people can get a fair, hassle-free cash offer for their home. This option for home sellers to be able to move without showings, without open houses on their own time line is proving its appeal. As we build back, we are focused on improving our cost structure on every line item, while simultaneously delivering more ease and convenience for our customers.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 16

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

49.  Defendant Parker provided details regarding Zillow Offers and the effect of the COVID-19 pandemic at the Company's November 16, 2020 appearance at the Needham Virtual Internet Services Conference. Specifically, Parker noted:

> As we come out of the pause, one of the positives that we have is that we were able to take a lot of those learnings, and again, I mentioned we kind of started up again a little more cautiously out of safety and just uncertainty.
>
> But we are smarter about what to buy, how long it's going to take us to renovate it. We continue to get better. And so all of those things actually spread across the markets relatively quickly. But there are certain markets that are hotter than others, and we continue to work those. I wouldn't say there's one formula that says after 18 months, one market is profitable. There's still a lot to learn and a lot of tech has developed. And that learning helps in us getting smarter, and we can -- typically, we can roll that into other markets quickly, and we can ramp them up a little faster than we did initially, but we've still got a lot to learn.

50.  At Zillow's November 18, 2020 appearance at RBC Global Technology, Internet, Media and Telecommunications Conference (Virtual), Defendant Barton answered questions regarding the future business condition of Zillow Offers, explaining, "But to answer your question directly, I'm confident now that we've seen enough and we've achieved the scale and we've learned enough that for Zillow, we can make the unit economics work. I am convinced of that, and I think we will get better from here."

51.  On February 10, 2021, Zillow filed a Form 8-K with the SEC that published its fourth quarter and full year 2020 financial results. Among other things, the Company reported 2020 revenue from Zillow Offers of more than $1.7 billion— a 25% increase, despite the COVID-19 pandemic, over 2019 revenue of nearly $1.4 billion. Zillow Offers accounted for 51% of the Company's total 2020 revenues.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

52.     That same day, during the Company's conference call, Defendant Barton stated his confidence in Zillow Offers stating, "[o]ur burgeoning sell side business, Zillow Offers, proved durable through some bad weather" and that while "[w]e paused home buying to manage risk during the early days of the pandemic" the Company "exited 2020 with our quarterly acquisitions pace returning to Q4 2019 levels."

53.     Similarly, Defendant Parker reiterated his faith in Zillow Offers stating:

During Q4, Zillow Offers benefited from operational improvements, stronger-than-expected home price appreciation across the country, a strong customer value proposition and faster sales velocity.

Home segment revenue of $304 million exceeded the high end of our outlook with home purchases returning to Q4 2019 levels. Our Q4 Zillow Offers unit economics of 668 basis points before interest was above the plus or minus 200 basis point guardrail we set for ourselves while working to scale the business. The outsized unit economic results were impacted by the stronger and faster housing market recovery than we initially assumed in addition to the expected benefit of a predominantly high mix of recently acquired homes following the first half air gap.

Q4 unit economics also showed meaningful operational progress in improving our cost per home sold. Combined, we saw all 3 operational cost line items improved nearly 250 basis points compared to Q3. We are continuing to target our underwriting goal of plus or minus 200 basis points going forward.

54.     The Individual Defendants' false assertions continued during the Relevant Period. Specifically, the Individual Defendants continued to assure investors of the profitability and sustainability of Zillow Offers with regard to the COVID-19 pandemic.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 18

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

55.     On April 21, 2021, Zillow filed the 2021 Proxy, issued by the Board, the 2021 Proxy sought stockholders votes on, among other things, the election of Defendants Blachford, Stephenson, and Thielke to the Board. The 2021 Proxy contained material misstatements and omissions.

56.     The 2021 Proxy Statement stated the  following statement regarding Zillow's corporate governance practices:

> At Zillow Group, we believe all employees and directors have a shared responsibility to maintain a culture of integrity. We view our corporate governance practices and policies as important drivers of our culture.

57.     With respect to the Board's risk management duties, the 2021 Proxy Statement stated the following:

> The Board considers the assessment of Company risks and development of strategies for risk mitigation to be a responsibility of the entire Board in consultation with the appropriate Board committee in the case of risks that are under the purview of a particular committee. The Board engages in risk oversight on a broad range of matters, including challenges associated with strategic acquisitions, regulatory and other legal and compliance matters, and threats relevant to our information technology environment….Each committee generally reports on its deliberations to the full Board during the committee reports portion of the next Board meeting. This enables the Board and its committees to coordinate their risk oversight roles.

58.     The 2021 Proxy Statement also listed the responsibilities of the Audit Committee, which at that time consisted of Defendants Maffei, Blachford, and Stephenson, as follows: "The audit committee assists our Board in oversight of (a) our accounting and financial reporting processes and the audits of our financial statements,  (b) the  independent  auditor's  qualifications,  independence  and performance, (c) our internal audit function, if any, and the performance of our

internal accounting and financial controls, and (d) our compliance with legal and regulatory requirements."

59.     On May 4, 2021, Zillow filed Forms 8-K and 10-Q, reporting Zillow's first quarter 2021 financial results. In discussing the results, Defendant Barton noted that they "exceeded expectations and showed our momentum toward delivering a seamless, end-to-end real estate transaction."

60.     During the Company's quarterly conference call, Defendant Barton explained that Zillow was "now beginning to register the benefits of the investments we have made across our product innovations" and that "[t]his increased profit generation after such a meaningful investment period gives us confidence that the bets we are making across the business are accretive, and we are allocating our time, our people and our capital appropriately for the long term."

61.     Defendant Parker once again reassured investors regarding the durable condition of Zillow Offers stating:

> Growth in Zillow Offers continue to reaccelerate in Q1. We reported Homes segment revenue of $704 million, which exceeded the high end of our outlook with 1,965 home sales. Resale velocity was above our expectations. In Q1, we sold 128% of the beginning inventory of 1,531 homes, which contributed to inventory declining at the end of Q1 to 1,422 homes. Purchases increased to 1,856 homes in the quarter from 1,789 homes purchased in Q4, but not quite at the pace we planned as we continue to work on refining our models to catch up with the rapid acceleration in home price appreciation.
>
> During Q1, we continued to focus on unit costs, automation, adding capacity and sharpening pricing models to improve offer strength as we continue to scale. Our Q1 Zillow Offers unit economics of 549 basis points return before interest expense was above the plus or minus 200 basis point guardrails we've set for ourselves while working to scale the business. The outsized unit economic results were impacted by the ongoing strong housing market, which is temporal in nature. We made progress during the quarter on improving offer strength and sharpened

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

pricing that tightened our unit economics by approximately 120 basis points from that of Q4. The durable operational improvements in overall cost per home contributed 280 basis points improvement from Q1 2020.

62.     Defendant Barton further explained that the confidence Zillow had in Zillow Offers:

> But on [Zillow Offers], in particular, Ron, we're leaning in, like -- we're leaning in. We're expanding in the 25 markets. We're heavily staffing, as I think we made an announcement, maybe Allen just talked about it, too. We are planning as a company. I'm hiring a net 2,000 people in 2021, and a lot of that will be for Zillow Offers. And we're making other investments in [Zillow Offers] as well.

So we are comfortable with that increased investment because of what we're seeing top of funnel because what we know about the consumer value proposition. And also, we're leaning in because most consumers don't even know what Zillow Offers is yet. They don't even know -- we've got to take Zillow 2.0 out of the kind of quarterly conference call realm and into the consumer awareness realm. And so we've got a lot of work to do there, and we're basis points penetrated in the business overall. So long answer, but we're feeling -- we're leaning in and feeling good.

63.     The Individual Defendants' false reassurances continued on August 5, 2021, when the Company filed its Forms 8-K and 10-Q with the SEC, reporting its second quarter 2021 financial results, including Zillow Offers revenue of $772 million (accounting for nearly 60% of total Company revenue). In the Company's earnings release, Defendant Barton mentioned Zillow Offers stating "[o]f particular note, our iBuying business, Zillow Offers, continues to accelerate as we offer more customers a fast, fair, flexible and convenient way to move. Zillow Offers is proving attractive to sellers even in this sizzling-hot seller's market. Finally, we expect millennial-buyers, low interest rates, and the increasing adoption of location-flexible

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

work policies, to fuel interest in moving for many years to come. And these movers will increasingly demand e-commerce-like solutions where Zillow excels."

64.    In the accompanying conference call with investors, Defendant Barton further stated:

> On the sell side, Zillow Offers continued to accelerate in Q2 with a record 3,805 homes purchased. We sold 2,086 homes, generating a record $777 million in revenue in our Home segment, surpassing our internal expectations for both revenue and EBITDA. Importantly, the Zillow Offers value proposition of a fast, fair, flexible and convenient close has proved more than durable even in the sizzling hot sellers' market. It's a nod to just how dreadful and dreaded the prospect of selling, buying and moving is to people. Likely, this is not a surprise to any of you. In our surveys of homeowners who want and need to move, when we present the Zillow Offers concept, the largest objection is there must be a catch.
> I'm pretty happy to market to that objection.
>
> As we discussed on our last call, we entered Q2 with strong customer interest in [Zillow Offers], which accelerated throughout the quarter and into Q3. Allen will get into more details. But as we said on our Q1 call, we saw significant customer demand at the beginning of Q2 that we expected would drive revenue growth on a lagged basis in Q3, which is now leading to our strong Q3 outlook. And we continued to see strong growth in customer demand as we entered Q3 that we expect will favorably impact revenue in future quarters. With that in mind, we are focused on making progress automating key workflows in support of building a large-scale operation.

65.    Defendant Parker also spoke highly of  Zillow Offers, discussing its continued growth stating:

> Growth in Zillow Offers continued to accelerate in Q2 and exceeded our expectations, with 2,086 homes sold, driving $777 million in Home segment revenue. We made progress this quarter in improving our pricing models, including launching the neural Zestimate, which sharpened our offer strength. The neural Zestimate puts more weight on attributes of homes and allows more granularity at the asset level,

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

placing less emphasis on repeat home sales price comparisons. In addition, we continue to make progress building automation at the top of the funnel when providing offers to customers. These improvements drove rapid gains in conversion rates in Q2 when compared to Q1, resulting in record purchases, more than catching up to our pre-pandemic pace. We purchased 3,805 homes during the second quarter, more than double what we purchased in Q1.

66.     Defendant Parker also spoke positively regarding Zillow's third quarter 2021, stating:

In Q3, we expect our Homes segment revenue to increase sequentially from Q2 to $1.45 billion at the midpoint of our outlook range. This step-up in pace demonstrates our confidence in our ability to scale, resulting from the progress we have made in strengthening our pricing models and automating the top of the funnel. Evidence of our accelerated pace can be seen in our homes under contract, which was $1.2 billion at the end of Q2, up 126% from $511 million at the end of Q1. I will reiterate that our goal here is to become a true market maker.

67.     The statements in ¶¶ 45-66 are materially false and misleading and/or failed to disclose that: (1) the Company knew that it did not have the ability to properly price homes for its Zillow Offers business; (2) this inability, in addition to labor and supply shortages, resulted in a backlog of inventory in the Zillow Offers business; (3) as a result of the foregoing, the Company was reasonably likely to wind-down its Zillow Offers business, which would have a material adverse impact of the Company's financial results; and (4) as a result of the foregoing, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**The Truth Begins to Emerge**

68.     The truth started to emerge on October 4, 2021, when analysts from RBC Capital Markets lowered their price target for Zillow, stating that "[a]n analysis of Zillow-owned homes for sale in Phoenix" suggests that Zillow Offers would

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

likely miss quarterly expectations. RBC Capital Markets noted that home price decline for Zillow's listings in Phoenix demonstrate that "the company likely still has meaningful inventory to work through into Q4 that was bought at too high a price and thus we would expect Q3 results and Q4 guidance to reflect this."

69.    On October 18, 2021, Zillow announced that, "[d]ue to a backlog in renovations and operational capacity constraints," Zillow Offers "will not sign any new, additional contracts to buy homes through the end of the year." In response to the news Defendant Wacksman, the Company's Chief Operating Officer, stated "We're operating within a labor- and supply-constrained economy inside a competitive real estate market, especially in the construction, renovation and closing spaces…We have not been exempt from these market and capacity issues and we now have an operational backlog for renovations and closings. Pausing new contracts will enable us to focus on sellers already under contract with us and our current home inventory."

70.    On this news, the price of Zillow common stock declined $8.84 per share, or more than 9%, from a close of $94.30 per share on October 15, 2021, to close at $85.46 per share on October 18, 2021.

71.    Then, on November 1, 2021, a day ahead of its third quarter earnings report, Zillow's stock took a hit as a new analyst report highlighted how many homes purchased by the Company were now underwater. KeyBanc analyst Edward Yruma said in his new report that most of the homes the Company had purchased — to fix up and flip — were now worth less than what Zillow paid for them.

72.    "Zillow may have leaned into home acquisition at the wrong time, and we believe earnings may be at risk due to its current home inventory ($1.17 billion at 2Q21)," Yruma wrote in a note to clients, as reported by *MarketWatch*. Yruma's note said an analysis of 650 homes in Zillow's inventory found that 66% are

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

currently listed below the purchase price at an average discount of 4.5%. Cities with the highest percentage of homes in this situation include San Diego (94.3%), Phoenix (93.4%) and Mesa, Ariz. (92.6%).

73.    Also on November 1, 2021, *Bloomberg* reported that Zillow is looking to sell about 7,000 homes as it seeks to recover from a fumble in its high-tech home-flipping business which saw it buy too many houses. Bloomberg reported that the Company is "seeking roughly $2.8 billion for the houses" and "Zillow will likely sell the properties to a multitude of buyers rather than packaging them in a single transaction, said the people, who asked not to be named because the matter is private."

74.    In response to this news, the price of Zillow common stock declined $20.24 per share over two trading days, or more than 19%, from a close of $105.72 per share on October 29, 2021, to close at $85.48 per share on November 2, 2021.

## DAMAGES TO ZILLOW

75.    As a direct and proximate result of the Individual Defendants' misconduct, Zillow has lost and will continue to lose and expend many millions of dollars.

76.    Such expenditures include, but are not limited to, costs and fees associated with the Securities Class Action filed against the Company and certain of the Individual Defendants.

77.    As a direct and proximate result of the Individual Defendants' conduct, Zillow has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE AND DEMAND ALLEGATIONS

78.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

79.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties.

80.     Plaintiff is an owner of Zillow common stock and was an owner of Zillow common stock at all times relevant hereto.

81.     Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting its rights.

82.     As a result of the facts set forth herein, Plaintiff has not made any demand on the Zillow Board to institute this action against the Individual Defendants. Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

83.     At the time this action was commenced, the Board consisted of nine directors: Barton, Blachford, Bohutinsky, Thielke, Frink, Hoag, Maffei, Stephenson, and Underwood. All nine members of the Board are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

**DEMAND IS FUTILE AS TO DEFENDANTS BARTON, BLACHFORD, BOHUTINSKY, THIELKE, FRINK, HOAG, MAFFEI, STEPHENSON, AND UNDERWOOD BECAUSE THEY EACH FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY**

84.     Defendants Barton, Blachford, Bohutinsky, Thielke, Frink, Hoag, Maffei, Stephenson, and Underwood all face a substantial likelihood of liability for their individual misconduct. Defendants Barton, Blachford, Bohutinsky, Thielke, Frink, Hoag, Maffei, Stephenson, and Underwood were directors during the time of the false and misleading statements, and as such had a fiduciary duty to ensure that

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

the Company's SEC filings, press releases, and other public statements and presentations on behalf of the Company concerning its business, operations, prospects, internal controls, and financial statements were accurate.

85.    Moreover, Defendants Barton, Blachford, Bohutinsky, Thielke, Frink, Hoag, Maffei, Stephenson, and Underwood as directors owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company was acting legally and its internal controls were sufficiently robust and effective (and were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, they reviewed, authorized and/or caused the publication of the materially false and misleading statements and the issuance of the public statements and presentations on behalf of the Company discussed above that caused the Company's stock to trade at artificially inflated prices.

86.    Defendants Barton, Blachford, Bohutinsky, Thielke, Frink, Hoag, Maffei, Stephenson, and Underwood knowingly and consciously allowing the authorization of false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and were being implemented effectively), failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required diligence constitute breaches of the fiduciary duties of loyalty and good faith, for which the Defendants Barton, Blachford, Bohutinsky, Thielke, Frink, Hoag, Maffei, Stephenson, and Underwood face a substantial likelihood of liability. If Defendants Barton, Blachford, Bohutinsky, Thielke, Frink, Hoag, Maffei, Stephenson, and Underwood were to bring a suit on behalf of Zillow to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   This is something they will not do. For this reason, demand is futile as to Defendants

2   Barton, Blachford, Bohutinsky, Thielke, Frink, Hoag, Maffei, Stephenson, and

3   Underwood.

4   **BARTON AND FRINK ARE NEITHER INDEPENDENT NOR DISINTERESTED**

5         87.   As Zillow admits in its SEC filings, including the 2021 Proxy,

6   Defendant Barton, the Company's Co-Founder and CEO, is not an independent

7   director. Defendant Barton is not independent for purposes of demand futility

8   because his principal occupation is Co-Founder and CEO of Zillow. For

9   compensation in this position, Barton received $8,446,226 for fiscal year 2020.

10   Barton's executive compensation amount is material to Defendant Barton. Per the

11   2021 Proxy, Barton owns 4,192,400 Class A common stock; 3,763,725 Class B

12   common stock; and 7,469,678 Class C common stock. Barton holds 30.6 % total

13   voting power.

14         88.   Zillow also admits in its SEC filings, including the 2021 Proxy, that

15   Defendant Frink, the Company's Co-Founder, Executive Chairman and President is

16   not an independent director. Defendant Frink is not independent for purposes of

17   demand futility because his principal occupation is Co-Founder, Executive

18   Chairman and President of Zillow. For compensation in this position, Frink received

19   $6,843,116 for fiscal year 2020. Frink's executive compensation amount is material

20   to Defendant Frink. Per the 2021 Proxy, Frink, owns 3,204,323 Class A common

21   stock; 2,453,722 Class B common stock; and 4,142,783 Class C common stock.

22   Fink holds 19.9% total voting power.

23         89.   Defendants Barton and Frink are also incapable of considering a

24   demand to commence and vigorously prosecute this action because they face

25   additional substantial likelihood of liability as they are named as defendants in the

26   Securities Class Action.

27
28   VERIFIED STOCKHOLDER DERIVATIVE
     COMPLAINT - 28

90.    Barton and Frink are also disinterested because they signed the 2021 Proxy Statement containing false and misleading statements and material omissions and face a substantial likelihood of liability therefor.

91.    Demand is also futile as to Defendants Barton and Frink because of their longstanding relationship with one another. Zillow came about because the pair had worked together at Microsoft and Expedia. Indeed, Barton and Frink started Expedia together in 1996, with Frink working as a senior vice president at Expedia, the travel company founded by Barton.  After they left, they were sharing an office and dreaming about their next big business idea. We realized the business idea was right in front of us," Barton recalls. To that end, the pair founded Zillow in 2005.  In addition, Barton was a venture partner at Benchmark, a venture capital firm that has been an early-stage investor in companies like Netflix, Instagram, WeWork and Zillow, from 2005 until 2018. While Barton worked as a venture partner at Benchmark Capital, the firm invested heavily in Grubhub and Frink has been on the supervisory board of Grubhub since 2013.

**DEMAND IS EXCUSED AS TO DEFENDANTS MAFFEI, BLACHFORD, AND STEPHENSON BECAUSE AS MEMBERS OF THE AUDIT COMMITTEE THEY FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY**

92.    Defendants Maffei, Blachford, and Stephenson as members of the Audit Committee during the Relevant Period, participated in and knowingly approved the filing of false financial statements and allowing the Company to repeatedly make other false and misleading statements through public statements and presentations to the investing public. More specifically, as members of the Audit Committee, Defendants Maffei, Blachford, and Stephenson were obligated to review the Company's annual and quarterly reports to ensure their accuracy. Instead, Defendants Maffei, Blachford, and Stephenson as members of the Audit Committee, failed to ensure the integrity of the Company's financial statements and financial

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

reporting process, the Company's systems of internal accounting and financial controls and other financial information provided by the Company, as required by the Audit Committee Charter. For this reason, demand is futile as to Defendants Maffei, Blachford, and Stephenson.

**DEMAND IS FUTILE AS TO DEFENDANTS BARTON, MAFFEI, BLACHFORD, AND BOHUTINSKY**

93.    Demand is also futile as to Defendants Barton, Maffei, Blachford, and Bohutinsky given the longstanding, intertwined relationship they have with one another as follows:

- Hoag is the General Partner of TCV, and is a direct or indirect director, limited partner, or member of the general partners of various private equity and venture capital funds of TCV that have been invested in by Barton, Wacksman, Maffei, Blachford, and Bohutinsky. Defendants Blachford and Bohutinsky consult as an executive advisor and venture partner of TCV, respectively. Blachford and Bohutinsky also may provide certain consulting or other services to TCV, for which they may receive indirect economic interests or value in certain investments by TCV's affiliated investment funds.

- Hoag serves on the board of directors of Netflix, Inc. with Barton.

- Hoag serves on the board of directors of Peloton Interactive, Inc. with Blachford.

- Hoag serves on the board of directors of TripAdvisor, Inc. with Maffei. Maffei is also the Chief Executive Officer and Chairman of the Board of Liberty TripAdvisor Holdings, which currently holds approximately a 23% equity interest and 58% voting interest in TripAdvisor, Inc.

- Maffei is Chairman of the board of directors of Qurate Retail, Inc., where Barton also serves as a director.

- Blachford and Barton are 50% co-owners of a condominium.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 30

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**DEMAND IS FUTILE AS TO DEFENDANT BOHUTINSKY**

94.     Demand is futile as to Bohutinsky because she lacks independence. Defendant Bohutinsky spent 13 years in leadership roles at Zillow, beginning as a founding team member at Zillow in 2005, and serving first as Chief Marketing Officer, then Chief Operating Officer. As such, Bohutinsky is a Company insider and demand is futile.

## COUNT I
### Against the Individual Defendants for
### Violations of Section 14(a) of the Exchange Act

95.     Plaintiff incorporates by reference and realleges each and every allegation set forth above as if fully set forth herein.

96.     The Section 14(a) claim alleged herein is based solely on negligence.  It is not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claim alleged herein does not allege and does not sound in fraud.  Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to those non-fraud claims.

97.     Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

98.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 31

in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

99.   The 2021 Proxy Statement was false and misleading because contrary to the 2021 Proxy Statement's descriptions of the Board's risk oversight function and the Audit Committee's responsibilities, the Board and its committees were not adequately exercising these functions, were causing or permitting the Company to issue false and misleading statements, and thus the Individual Defendants on the Board were breaching their fiduciary duties.

100.   The 2021 Proxy Statement further was false and misleading because it failed to disclose to investors that: (1) the Company knew that it did not have the ability to properly price homes for its Zillow Offers business; (2) this inability, in addition to labor and supply shortages, resulted in a backlog of inventory in the Zillow Offers business; (3) as a result of the foregoing, the Company was reasonably likely to wind-down its Zillow Offers business, which would have a material adverse impact of the Company's financial results; and (4) as a result of the foregoing, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

101.   In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2021 Proxy Statement were materially false and misleading. These misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the Proxy Statement, including, but not limited to the election of directors, as discussed herein.

102.   The misleading information contained in the 2021 Proxy Statement was material to Zillow's shareholders in determining whether to elect Blachford, Stephenson, and Thielke to the Board.

103.   The material misstatements and omissions in the 2021 Proxy Statement damaged the Company.

104.   Plaintiff, on behalf of Zillow, seeks relief for damages inflicted upon the Company based on the misleading 2021 Proxy Statement in connection with the improper election of certain members of the Board.

## COUNT II
### Against the Individual Defendants for Breach of Fiduciary Duty

105.   Plaintiff incorporates by reference and realleges each allegation contained above, as though fully set forth herein.

106.   The Individual Defendants owed and owe Zillow fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Zillow the highest obligation of good faith, fair dealing, loyalty and due care.

107.   The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

108.   The Individual Defendants had actual or constructive knowledge regarding the problems associated Zillow Offers as alleged herein and also knowingly made false and misleading statements regarding the Company's business operations, practices, and internal controls in connection therewith, as alleged herein. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

109.   As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Zillow has sustained significant and actual

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 33

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

110.   Plaintiff, on behalf of Zillow, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

A.   Declaring that Plaintiff may maintain this action on behalf of Zillow, and that Plaintiff is an adequate representative of the Company;

B.   Declaring that the Individual Defendants have breached their breach of their fiduciary duties to Zillow and other violations of law;

C.   Declaring that the Individual Defendants violated Section 14(a) of the Exchange Act;

D.   Determining and awarding to Zillow the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

E.   Awarding Zillow restitution from the Individual Defendants, and ordering disgorgement of all profits, benefits and other compensation obtained by them;

F.   Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.   Granting such other and further relief as the Court deems just and proper.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 34

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: May 5, 2022                Respectfully submitted,

**BRESKIN JOHNSON TOWNSEND, PLLC**

By: _s/ Roger Townsend_
    Roger Townsend, WSBA No. 25525
    1000 Second Avenue, Suite 3670
    Seattle, WA  98104
    Tel: (206) 652-8660
    rtownsend@bjtlegal.com

**HYNES & HERNANDEZ, LLC**
    Michael J. Hynes, _pro hac vice anticipated_
    Ligaya T. Hernandez, _pro hac vice anticipated_
    101 Lindenwood Drive, Suite 225
    Malvern, PA 19355
    Tel: (484) 875-3116

_**Counsel for Plaintiff**_

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 35

BRESKIN | JOHNSON | TOWNSEND <sup>PLLC</sup>
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660